J-S64022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY FSB D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT A TRUSTEE FOR PREMIUM MORTGAGE ACQUISITION TRUST, OR ITS SUCCESSOR OR ASSIGNEE | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 516 WDA 2019 |
| KEITH D. HILL AND ANNETTE E. HILL | : : | |
| Appellants | : | |

Appeal from the Order Entered March 15, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  MG-12-01762

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 6, 2020**

Keith D. Hill and Annette E. Hill (collectively, the Hills) appeal from the order, entered in the Court of Common Pleas of Allegheny County, denying their emergency petition to set aside the sheriff's sale of 210 Garlow Drive, Pittsburgh, PA 15235 (the Property).  After careful review, we affirm.

On June 27, 2018, Wilmington Savings Fund Society, FSB's (WSFS) predecessor-in-interest[1] executed a $79,920.00 loan with the Hills, secured by a mortgage on the Property.  The Hills subsequently defaulted on their

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Bank of America, NA., successor by merger to BAC Home Loans Servicing, LP, initiated the instant action against the Hills.  WSFS substituted as plaintiff on August 1, 2017.

repayment obligations. WSFS' predecessor filed the complaint in the instant action on September 25, 2012. On October 11, 2012, the Allegheny County sheriff's Office personally served the complaint at the Property upon Annette Hill, who accepted service on behalf of Keith Hill.

On October 29, 2013, after the Hills failed to answer the complaint, the prothonotary entered default judgment in favor of WSFS' predecessor. On December 20, 2013, WSFS' predecessor's attorney produced a sworn affidavit of compliance with Act 6 of 1974, 41 P.S. 101, *et seq.*, and Act 91 of 1983, stating that on April 10, 2012, the Hills were "mailed Act 6 [n]otices of [i]ntention to [f]oreclose by certified mail, return receipt requested and first[-]class U.S. Mail" and that "[n]otice under Act 91 was not provided as the provisions of Act 91 were not applicable after August 27, 2011[.]" Affidavit, 12/20/13, at 1. On December 23, 2013, WSFS' predecessor filed a praecipe to issue writ of execution to enforce the default judgment, but stayed the writ on April 14, 2015.

WSFS became the party in interest by assignment and substitution of plaintiff on August 1, 2017, thereafter filing a praecipe to reissue the writ of execution on August 15, 2017. The Allegheny County Sheriff was directed to sell the Property to satisfy the judgment against the Hills in a sale scheduled for November 6, 2017. On September 10, 2017, the sheriff personally served Keith Hill with notice of the impending sheriff's sale. Keith Hill accepted notice for Annette Hill. The sheriff's sale proceeded as scheduled, resulting in WSFS' purchase of the Property for costs.

On November 9, 2017, the Hills filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Pennsylvania, automatically staying all collection actions by creditors and preventing WSFS from recording the deed to the Property. On November 22, 2017, the Hills also filed an emergency petition to set aside the sheriff's sale. On May 11, 2018, upon WSFS' motion, the Bankruptcy Court vacated the automatic stay, permitting WSFS to continue pursuing its right to the Property, and allowing the Hills to contest the result of the November 6, 2017 sheriff's sale.

With the stay lifted, WSFS filed a reply to the Hill's petition to set aside the sheriff's sale. On November 1, 2018, the court issued a rule upon WSFS to show cause why the Hills were not entitled to have the sheriff's sale set aside. After receiving briefs from both parties and hearing oral argument, the court denied the Hills' petition on March 18, 2019, from which the Hills timely filed a notice of appeal. Both the Hills and the court complied with Pa.R.A.P. 1925.

The Hills raise the following claims on appeal:

1. Did the trial court err by denying [the Hills'] petition to set aside a sheriff's sale where [the Hills] established that [WSFS] failed to adequately serve [the Hills], denied [the Hills] due process and divested the trial court of jurisdiction to enter judgment in this matter?

2. Did the trial court err in denying [the Hills'] petition to set aside the sheriff's sale without providing [the Hills] with the opportunity to present evidence that the sale price of their property was grossly inadequate?

3. Did the trial court err by denying [the Hills'] petition to set aside the sheriff's sale where [WSFS] failed to comply [with] Act 6 and Act 91 by failing to adequately serve [the Hills] with notice pursuant to the Pennsylvania Foreclosure Prevention Act and the rules and regulations promulgated by the Pennsylvania Housing Finance Agency?

4. Did the trial court err that in denying [the Hills'] petition to set aside the sheriff's sale, it did not find that [WSFS] failed to comply with the mandatory requirement of Act 6 in violation of [our] Supreme Court's holding in *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187 (Pa. 2009)?[2]

Brief of Appellant, at 5–6.

We keep the following principles in mind while reviewing the Hills'

claims:

The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor. A petition to set aside a sheriff's sale is grounded in equitable principles and is addressed to the sound discretion of the hearing court. The burden of proving circumstances warranting the exercise of the court's equitable powers rests on the petitioner, as does the burden of showing inadequate notice resulting in prejudice, which is on the person who seeks to set aside the sale. When reviewing a trial court's ruling on a petition to set aside a sheriff's sale, we recognize that the court's ruling is a discretionary one, and it will not be reversed on appeal unless there is a clear abuse of that discretion.

An abuse of discretion is not merely an error of judgment. Furthermore, it is insufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the trial court.

---

[2] We note with disfavor the fact that the Hills raise four claims in their statement of questions involved, yet consolidate their third and fourth claims into a single argument section. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]").

> An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

**GMAC Mortg. Corp. of PA v. Buchanan**, 929 A.2d 1164, 1167 (Pa. Super. 2007) (citations and quotations omitted).

In their first claim, the Hills argue WSFS' predecessor served process on Keith Hill via substituted service under Pa.R.C.P. 430(a) without first seeking the court's permission to do so, giving rise to a violation of due process that prevents WSFS from foreclosing on the Property, deprives the court of jurisdiction, and invalidates the sale of the Property. **See** Brief of Appellant, at 16 (citing Pa.R.C.P. 400 and Pa.R.C.P. 410); **see also id.** at 20–21 (citing Pa.R.C.P. 430(a)).

The Hills' claim rests on the assumption that they received substituted service under Rule 430(a). **See id.** The sheriff's return, however, indicates, on October 11, 2012, at 3:11 pm, the Allegheny County sheriff's Office served process upon Annette Hill in person at the Property, and that she accepted service on behalf of both herself and Keith Hill. **See** sheriff Return for Annette Hill, 10/11/12, at 1; **see also** sheriff Return for Keith Hill, 10/11/12, at 1. There is nothing in the record implicating Rule 430(a).

Rather, the instant circumstances are governed by Rule 410(a), which states, "[i]n actions involving title to, interest in, possession of, or charges or liens upon real property, original process shall be served upon the defendant

- 5 -

in the manner provided by Rule 400 *et seq*." Pa.R.C.P. 410(a). Rule 402(a) allows for service of original process, *inter alia*, by: (1) handing a copy to the defendant; or (2) handing a copy at the residence of the defendant to an adult member of the family, or if no adult member of the family is found, then to an adult person in charge of such residence. Pa.R.C.P. 402(a).

The complaint, which was never contested, states the Hills were mortgagors of, and residents at, the Property. ***See*** Complaint, 9/25/12, at 3; ***see also*** Pa.R.C.P. 1029 ("Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication."). The Hills do not contest the fact that Keith and Anita Hill are family members.[3] ***See*** Brief of Appellant, at 14–23. The sheriff, therefore, properly served the Hills with process under the Rules of Civil Procedure. ***See***

---

[3] The Hills raise an ancillary argument that the "representation in the [S]heriff's return that service upon [Keith] Hill was made upon a family member with whom he resides is not a matter within the knowledge of the [S]heriff who executed the return." Brief of Appellant, at 20. This assertion is based on a misreading of ***Liquid Carbonic Corp. v. Cooper & Reese, Inc.***, 416 A.2d 549 (Pa. Super. 1979), a clearly distinguishable case in which this Court found error in the trial court's refusal to open default judgment under circumstances where a sheriff went to a shopping center, approached what he believed was the corporate defendant's place of business, "saw a number of men in the immediate vicinity" and "gave the complaint to a man whose name he did not learn[,]" never confirming whether he gave the complaint to an employee of the corporate defendant. ***See id.*** (citing ***Liquid Carbonic Corp.***, ***supra*** at 551–52). Instantly, the sheriff served process personally upon one co-defendant, who accepted service on behalf of her co-defendant. ***See*** sheriff Return for Annette Hill, 10/11/12, at 1; ***see also*** sheriff Return for Keith Hill, 10/11/12, at 1.

Pa.R.C.P. 402(a); *see also Flaherty v. Atkins*, 152 A.2d 280, 281 (Pa. Super. 1959) (serving process upon defendant by handing copy of process to adult member of family at residence constitutes valid service).

In their second claim, the Hills argue the court erred by failing to set aside the sheriff's sale based on the gross inadequacy of the sale price of the property.[4]  Brief of Appellant, at 23.

"Mere inadequacy of price is not a sufficient reason to set aside a sheriff['s] [s]ale.  To set aside such a sale[,] the price must be grossly inadequate." *Vend-A-Matic, Inc. v. Frankford Trust Co.*, 442 A.2d 1158, 1162 (Pa. Super. 1982).  "Furthermore, the outstanding mortgage balance must be considered in determining the adequacy of a sale price." *See Continental Bank v. Frank*, 495 A.2d 565, 569 (Pa. Super. 1985) (considering "outstanding mortgage debt including interest, late charges and attorney's fees" totaling $227,030.70 plus cost of sale for $245,000 in evaluating adequacy of sale price as compared to mortgagor's asserted value of $400,000).

_____

[4] In their appellate brief, the Hills aver both that the Property was sold for a grossly inadequate price and that they were not given an opportunity to present evidence of the sale price's gross inadequacy.  *See* Brief of Appellant, at 23.  They, however, waived the latter argument by failing to raise it in their Rule 1925(b) concise statement of errors complained of on appeal.  *See* Pa.R.A.P. 1925(b) statement (averring only gross inadequacy of price); *see also Feilder v. Morris Coupling Co.*, 784 A.2d 812, 817 (Pa. Super. 2001) (precluding Superior Court from reviewing issues not raised in Rule 1925(b) statement).

The Hills assert the fair market value of the house in 2012 was between $110,000.00 and $130,000.000. Brief of Appellant, at 8. The outstanding mortgage balance totaled $116,882.89. Praecipe to Reissue Writ of Execution, 8/15/17, at 2. Although the Property sold for costs, we must consider the value of the outstanding mortgage *along* with the sale price when evaluating whether or not the sale price was grossly inadequate. **See Frank**, **supra** at 569 (considering the outstanding mortgage balance *together* with sale price in evaluating adequacy of sale price); **see also** Pa.R.A.P. 1925(a) Opinion, 6/6/19, at 6 ("This figure falls within the alleged 'fair market' values as suggested by the [Hills.]"). Consequently, we cannot find the court abused its discretion in failing to set aside the result of the sheriff's sale on the grounds that the price was grossly inadequate as the outstanding mortgage balance alone fell squarely within the range of values asserted by the Hills. **See Frank**, **supra** at 569; **see also Vend-A-Matic, Inc.**, **supra** at 1162.

In their third and final claim,[5] the Hills argue the trial court erred by failing to set aside the sheriff's sale on the grounds that WSFS and its predecessors-in-interest failed to comply with mandatory notice requirements under the Loan Interest and Protection Law[6] (Act 6) and the Homeowner's

---

[5] As stated **supra**, the Hills list four questions presented, but improperly present their third and fourth claims as a single argument. **See supra** at n.2 (citing Pa.R.A.P. 2119(a)).

[6] 41 P.S. §§ 101 *et seq*.

Emergency Mortgage Assistance Act[7] (Act 91). **See** Brief of Appellant, at 27.

The Hills claim WSFS and its predecessor filed separate actions, and that WSFS

failed to provide notice under Act 6, violating our Supreme Court's holding in

**Taggart**, **supra**. **See id.** at 31–36. The Hills further assert WSFS never sent

Act 91 notice, arguing this omission should have deprived the trial court of

jurisdiction. **See id.** We address these alleged errors *seriatim*.

In **Taggart**, **supra**, our Supreme Court expounded on Act 6, in relevant

part, as follows:

> Act 6 is a usury law, designed to protect borrowers against
> improper mortgage lending practices. The comprehensive
> statutory scheme demonstrates an extensive program designed
> to avoid mortgage foreclosures. In addition to regulating
> maximum lawful interest rates, Act 6 provides safeguards to
> residential borrowers before they face foreclosure.
>
> . . .
>
> The General Assembly has identified industry customs that it
> deems particularly pernicious, one of which is the initiation of
> foreclosure with insufficient notice. In order to remedy this
> problem, the lawmakers created specific notice requirements to
> ensure that borrowers are aware not only that they are considered
> to be in default, but also of the amount required to cure that
> default and the time within which they may do so.
>
> . . .
>
> In view of the statutory language, the occasion and necessity for
> Act 6, the mischief to be remedied, and the object to be attained,
> we conclude that *Act 6 requires a new pre-foreclosure notice each
> time the lender initiates a mortgage foreclosure action. It is not*

---

[7] 35 P.S. §§ 1680.401c *et seq*.

*sufficient for the lender to recycle a stale notice that preceded a prior action, regardless of how that action finally was resolved.*

***Taggart***, ***supra*** at 194–96 (emphasis added).

The Hills argue WSFS failed to send Act 6 notice as mandated by ***Taggart***.[8]  ***See*** Brief of Appellant, at 34 ("The trial court erred in not applying ***Taggart*** to the instant case since the cases are similar in that in both cases, the plaintiffs failed to comply with the mandatory Act 6 notice.").

_____

[8] The Hills argue both: (1) they were not served with Act 6 notice by WSFS; and (2) the Act 6 notice upon which WSFS relies is legally insufficient.  ***See*** Brief of Appellant, at 34–35 (arguing alternatively, "it is undisputed that [WSFS] never provided the Hills with [] Act 6 Notice," and "[t]he notice that [WSFS] purportedly provided[] is insufficient to overcome the notice deficiency under Act 6 [as] the notice upon which [WSFS] relies" fails to conform with Act 6 notice content requirements.).  The Hills, however, did not argue in their emergency petition to set aside the sheriff's sale that WSFS or its predecessor failed to clearly and conspicuously conform to the content requirements of Act 6.  Emergency Petition to Set Aside sheriff's Sale, 11/22/17, at 6–7.  They, instead, argue WSFS provided defective service.  ***See id.***  (alleging mailing failed to conform to Act 6 service requirements).  Moreover, the relevant portion of their Rule 1925(b) statement claims WSFS and its predecessor provided service improperly and the trial court failed to apply ***Taggart***, ***supra***.  ***See*** Pa.R.A.P. 1925(b) statement, 5/2/19, at 1–2.  Consequently, the Hills have waived any argument regarding WSFS' failure to conform to the content requirements of Act 6.  ***See Tindall v. Friedman***, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("[T]he trial court was not given an opportunity to correct any purported error . . . [therefore,] this issue is waived.").  We further note the complaint filed by WSFS' predecessor attested to sending notice of its intent to foreclose in compliance with Act 6—a complaint, which, as stated ***supra***, went uncontested.  ***See*** Complaint, 9/25/12, at 5 ("Notice of Intention to Foreclose under Act 6 of 1974 (41 P.S. § 403) was sent to Defendant by certified mail, return receipt requested as required by that Act."); ***see also see also*** Pa.R.C.P. 1029 ("Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication.").

*Taggart* is factually distinguishable and logically inapplicable. In *Taggart*, our Supreme Court sought to protect a mortgagor from lenders attempting to "recycle a stale notice that preceded a prior action[.]" *Taggart*, *supra* at 196. The facts underpinning the Court's ruling were as follows:

> Taggart filed preliminary objections to the 2010 Action. Chase Bank failed to file a timely response. . . . [T]he trial court sustained Taggart's preliminary objections. On March 8, 2012, Chase Bank assigned the rights and interest in the mortgage to JP Morgan Chase Bank ("JP Morgan"). Neither Chase Bank nor JP Morgan took further action on the docketed complaint. On May 1, 2013, the docket was closed administratively due to inactivity exceeding twenty-four months.
>
> On July 26, 2013, JP Morgan *filed a second complaint in mortgage foreclosure against Taggart, under a new docket number*. . . . *JP Morgan did not sent a new Act 6 Notice*.

*Taggart*, *supra* at 195 (emphasis added).

Instantly, WSFS continued pursuing the same matter as its predecessor by means of substitution under Pa.R.C.P. 2532, not by initiating a second matter under a second docket number by filing a second complaint. *See* Substitution of Successor Plaintiff, 8/1/17, at 1. Further, WSFS' filings sought to enforce the default judgment already in effect against the Hills by means of filing a praecipe to reissue the writ of execution. *See* Praecipe to Reissue Writ of Execution, 8/15/17, at 1 (requesting amount due under default judgment, entered October 29, 2013, plus interest).

*Taggart* sought to prevent "the initiation of foreclosure with insufficient notice" by ensuring mortgagors are informed by "a new pre-foreclosure notice each time the lender initiates a mortgage foreclosure action." *Taggart*, *supra*

at 196. The remedy provided by **Taggart** is, therefore, inapplicable under circumstances where a substituted party continued pursuing its predecessor's claims by seeking to enforce a previously entered judgment. **See id.**; **see also** Praecipe to Reissue Writ of Execution, 8/15/17, at 1.

We turn to the Hills' remaining argument concerning Act 91. Act 91 enables the Pennsylvania Housing Finance Agency (the Agency) to assist mortgagors with monthly mortgage assistance payments. **See** 35 P.S. § 1680.405c. Broadly, Act 91 requires foreclosing mortgagees to send notice of the impending foreclosure to mortgagors. **See** 35 P.S. § 1680.403c. However, "[t]he provisions of [Act 91] shall not be applicable to any mortgage which becomes delinquent at any time when the [A]gency has officially declared that it does not have money currently available in the Homeowner's Emergency Mortgage Assistance Fund to approve applications for emergency mortgage assistance[.]" 35 P.S. § 1680.409c. Ninety days after the Agency declares a lack of funds, "mortgagees shall no longer be subject to the provisions of this article and mortgagees may, at any time after the published date, take legal action to enforce the mortgage without any further restriction or requirement under [Act 91]." **Id.**

On May 28, 2011, pursuant to Section 1680.403c, the Agency declared it would have insufficient funds to accept new applications for emergency mortgage assistance as of July 1, 2011. **See** 41 Pa.B. 2789 (announcing lack of funds in Pennsylvania Bulletin). On July 16, 2011, the Agency updated its

declaration, establishing August 27, 2011 as the date on or after which mortgagees could "take legal action to enforce the mortgage without further restriction or requirement of [Act 91.]" 41 Pa.B. 3943, at 1. The July 16, 2011 declaration specifically enumerated the provisions of Act 91 being suspended—a range including Section 1680.403c. *See id.* ("[M]ortgagees shall no longer be subject to the provisions of Article IV-C of [Act 91] (35 [P.S.] §§ 1680.401c–1680.412c)."); *see also id* (noting suspension of notice requirements under Act 91 did not impact notice requirements under Act 6). The Agency reinstated Act 91's notice requirements on October 2, 2012. *See* Pa.B. 5447 at 1–2 (stating the Agency had sufficient funds to resume mortgage-relief activity; informing mortgagees of effective date for reinstatement of notice requirements).

WSFS' predecessor filed the complaint in the instant action on September 25, 2012. Act 91's notice requirements were not reinstated until October 2, 2012; consequently, the trial court did not abuse its discretion by declining to set aside the result of the sheriff's sale for lack of Act 91 notice. *See* 35 P.S. § 1680.409c. Consequently, both arguments under the Hills' third claim fail.

Order affirmed.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2020